dissenting.
The end objective of the process at issue is the selection of judges whose impact is fundamentally general. The impact of this process on the employment of lawyers is of little consequence when measured against its impact on litigants and the rules governing social behavior.
In Salyer and Ball, the end impact was on discrete groups. That is, the election in those cases directly determined the governing officers for a water district that “disproportionately affect[ed] landowners.” Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 729, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973). The general public was only nominally impacted. Moreover, “the provision of [utilities] is not a traditional element of governmental sovereignty, and so is not in itself the sort of general or important governmental function that would make the government provider subject to the doctrine of the Reynolds case.” Ball v. James, 451 U.S. *795 355, 368, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981) (citation omitted). “[T]he relationship between [residents] and the District’s power operations is essentially that between consumers and a business enterprise from which they buy.” Id. at 370, 101 S.Ct. 1811.
Here, by contrast, the election at issue is for a majority of the members of the nominating commission which limits the governor as judicial-appointing authority to one of three candidates. The selection of judicial candidates is quintessentially governmental in nature, and a judicial nominating commission “bears no resemblance at all to the nominally public business enterprises at issue in Ball.” Nelson Lund, May Lawyers Be Given the Power To Elect Those who Choose Our Judges? “Merit Selection” and Constitutional Law, 34 Harv. J.L. & Pub. Pol’y 1043, 1053 (2011). “This nominating power has to be regarded as a governmental function, and subjected to strict scrutiny, for the same reason that the Supreme Court applies strict scrutiny to primary elections conducted by political parties and elections to the electoral college.” Id. at 1053-54 (footnote omitted). The fact that only lawyers may serve on the bench adds little to the weighing process, given the strong public interest in the selection of state court judges.
The election at issue, like a primary election, is one step in the process of determining who will exercise one of the three most critical governmental functions: here, the judicial function. This election is not shielded from constitutional challenge simply because its role in this process is indirect: “Presidential elections, for example, are subject to scrutiny under Reynolds, notwithstanding the intermediating role of the electoral college.” Id. at 1049.
Nor does the governor’s final say in the appointment process insulate the nominating commission election from constitutional concerns. The nominating commission does not simply screen and recommend candidates in an advisory fashion — it presents three possible candidates to the governor, one of whom he must select even if he finds all three unacceptable. This process is subject to manipulation, as the commission can effectively choose its own candidate by nominating only one acceptable choice along with two individuals it knows the governor will not select. See id. at 1050. “By delegating to the state’s lawyers the authority to elect a controlling majority of a body that exercises almost all of the discretion involved in appointing supreme court justices, Kansas has virtually given the state bar the authority to elect those who choose the justices. The State’s choice of a complex procedure that obscures that effect cannot alter the reality of the effect.” Id. at 1055. Moreover, there is not even the saving grace of confirmation of the appointment choice by the legislature (a representative elected body).
I would find the election unconstitutional under the Supreme Court’s equal protection jurisprudence.